500 A.2d 1200

**COMMONWEALTH of Pennsylvania**

v.

**Vanders RICHARDSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Aug. 6, 1985.

Filed Nov. 15, 1985.

Michael A. Jankowski, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before BROSKY, ROWLEY and OLSZEWSKI, JJ.

BROSKY, Judge:

This is an appeal from the judgment of sentence imposed after a jury trial at which appellant was found guilty of aggravated assault, robbery, carrying firearms in a public street and without a license in a vehicle, and conspiracy.

Appellant raises three issues for our determination: whether the trial court erred by not granting a motion to suppress appellant's identification due to a suggestive encounter between the victim and appellant at a preliminary hearing; whether initial trial counsel rendered ineffective assistance by failing to appear at appellant's first scheduled preliminary hearing; and whether the trial court abused its discretion by ruling appellant's prior criminal convictions could be used for impeachment.

We have carefully reviewed the record and briefs submitted by counsel and find appellant's issues to be without merit. Therefore, we affirm the judgment of sentence.

On February 17, 1977 Paul Kretovich returned to his car after stopping at a bar to get some beer. As he was getting into his car he was attacked by two males. He was pushed into the car while one of the attackers continually beat him on the head with a pistol. The two attackers jumped into the car, and after driving for ten minutes, pulled over and threw Kretovich out. He summoned the aid of a police patrolman and gave a description and tag number of his car. Thereafter, another police officer spotted the car and began pursuit. The stolen car struck a parked car and the attackers fled on foot. In haste, one of the attackers left some papers and a subpoena addressed to one Allen Whitman on the seat of the car. The next day, Kretovich identified Allen Whitman as one of his attackers. Whitman was arrested and based on information he gave the police, appellant was apprehended.

Kretovich was later subpoenaed to appear at a preliminary hearing in the matter on March 18, 1977. At that hearing only appellant was present, as his accomplice was not transferred from the detention center. Appellant was also without his counsel. The victim saw appellant in the courtroom, but before the hearing could begin it was continued until March 25, 1977.

At trial, appellant moved to have the identification made by Kretovich suppressed due to the March 18th encounter. His motion was denied. After a jury trial, appellant was sentenced on December 12, 1977. Although appellant's trial counsel timely filed an appeal to this Court, counsel never filed an appeal brief. Therefore, this Court entered an order of non pros to appellant's initial appeal. On January 31, 1985, appellant was granted relief under the Post Conviction Hearing Act, "to the extent of permitting the defendant (appellant) to pursue direct appeal *nunc pro tunc* from his judgment of sentence."

Appellant first contends that the trial court erred by not granting his motion to suppress the victim's identification testimony. This issue turns on whether the March 18, 1977 encounter between the victim and appellant at the postponed preliminary hearing was so suggestive that Kretovich's identification testimony became unreliable. There is no indication in the record that the victim's testimony was rendered unreliable due to the encounter.

■ The United States Supreme Court addressed the suggestibility issue in *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972):

As indicated by our cases, the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Later in *Manson v. Bráthwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977), the Court said, "We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony...." This Court adopted a similar position in *Commonwealth v. Ferguson*, 327 Pa.Super. 305, 313, 475 A.2d 810, 814 (1984).

[W]e employ a totality of the circumstances test when determining the reliability of a challenged identification; and, specifically, we consider the following factors:

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

In the case before us, Kretovich was no less than positive in his identification of appellant as one of his two attackers. Kretovich had ample time during the commission of the

crime to see both men. The record supports a finding of reliability. Any taint of suggestion caused by the March 18, 1977 encounter was far outweighed by the circumstances that led to an unquestionable identification of appellant.

In conjunction with the aforesaid reasoning we also conclude that appellant was not denied effective assistance of counsel. As indicated, the identification of appellant by Kretovich was extremely reliable. Had circumstances been different and the March 18, 1977 hearing not been continued, there may have been some merit to appellant's contention. However, we can see absolutely no prejudice derived from counsel's absence at the postponed March 18, 1977 hearing. Absent prejudice to appellant, there can be no claim of ineffectiveness of counsel. *Commonwealth v. Larkins*, 340 Pa.Super. 56, 489 A.2d 837 (1985).

Appellant, in his final assignment of error, contends that the trial court abused its discretion by ruling that his prior robbery convictions could be used for impeachment. Faced with that ruling, appellant declined to take the stand. The admissibility of evidence of prior convictions for the impeachment of a defendant witness is within the sound discretion of the trial judge, whose decision thereon will not be reversed absent an abuse of discretion. *Commonwealth v. Kearse*, 326 Pa.Super. 1, 6, 473 A.2d 577, 580 (1984). In exercising its discretion, the trial court must consider the factors enunciated in *Commonwealth v. Roots*, 482 Pa. 33, 39–40, 393 A.2d 364, 367 (1978):

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to

this evidence as compared with the availability to the defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility. (footnote omitted).

Furthermore, it is the prosecution's burden to show that the need for prior conviction evidence overcomes its inherent potential for prejudice. *Id.*

The Commonwealth asserts that appellant's failure to testify at his trial precludes appellate review of his *Bighum* claim, citing the recent United States Supreme Court opinion in *Luce v. United States,* —— U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). This assertion is an incorrect statement of the law of Pennsylvania. The decision in *Luce* is not binding on the courts of this Commonwealth because it is a decision based solely on a Federal Rule of Evidence.[1] Furthermore, we cannot follow *Luce* as a matter of choice because the decisions of the courts of this Commonwealth clearly reject the Supreme Court's rationale for its decision.

The decision in *Luce* is grounded on the notion that, absent testimony by a defendant, an appellate court is unable to give meaningful review to the trial court's determination that evidence of prior convictions would be admissible for impeachment. The opinion states at ——, 105 S.Ct. at 463–464:

"A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify....

**1.** The *Luce* case addresses Federal District Court procedures in applying Federal Rule of Evidence 609(a), 28 U.S.C.A.

> When the defendant does not testify, the reviewing court also has no way of knowing whether the Government would have sought to impeach with the prior conviction. If, for example, the Government's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction. . . . Because an accused's decision whether to testify seldom turns on the resolution of one factor," *New Jersey* v. *Portash*, 440 U.S. 450, 467, 99 S.Ct. 1292, 1301, 59 L.Ed.2d 501 (1979) (BLACKMUN, J. dissenting), a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify. (Footnotes omitted).

After setting forth these and other observations, the *Luce* court held that to preserve the issue of improper impeachment by prior convictions, a defendant must testify.

To accept this requirement for preservation of a *Bighum* issue, as the Commonwealth would have us do, would require us to ignore years of contrary case law in Pennsylvania. The appellate courts of Pennsylvania have consistently been able to give meaningful review to *Bighum* claims in the absence of testimony by defendants. In fact, the two keystone cases which helped to develop Pennsylvania's law as to the use of prior convictions for impeachment purposes, *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973) and *Roots*, supra, both involved trials in which the respective appellants had not testified. Since *Bighum*, supra, the appellate courts of this Commonwealth have continued to provide meaningful review in the absence of testimony by defendants. See, e.g., *Commonwealth v. Bunch*, 329 Pa.Super. 101, 477 A.2d 1372 (1984); *Commonwealth v. Williams*, 273 Pa.Super. 389, 417 A.2d 704 (1980); *Commonwealth v. Campbell*, 244 Pa.Super. 505, 368 A.2d 1299 (1976).

■ Finally, our courts do not agree with Chief Justice Burger's observation in *Luce*, supra, that a defendant's

decision to testify seldom turns on the trial court's ruling on the use of prior conviction evidence. To the contrary, the Pennsylvania Supreme Court noted in *Roots*, supra, 482 Pa. at 36, 393 A.2d at 364, that "knowledge that [a defendant's] past convictions will be revealed to the jury, if he testifies, may well foreclose his only opportunity to present his version of the occurrence." Therefore, we expressly reject the Commonwealth's assertion that a *Bighum* issue is waived where an appellant does not testify at trial.[2]

At the conclusion of the Commonwealth's case, the trial court excused the jury and held a *Bighum* hearing to determine whether any of appellant's past convictions could be introduced for impeachment purposes, if appellant decided to testify. The record of the *Bighum* hearing conducted by the trial court in the instant case indicates that the *Roots* factors were properly considered and that the Commonwealth met its burden of proof. The two prior convictions were for robbery and, thus, necessarily reflected upon appellant's veracity. The convictions sought to be introduced were not stale, having occurred within five years of trial. Most important is the fact that the prosecution's case rested solely on the testimony of the victim and various police officers. There was no conclusive physical evidence.

■ Therefore, if appellant had testified, the Commonwealth would have had to attempt to impeach the testimony. In this case, the prosecution had no other means available to impeach appellant's testimony. Therefore, we find no abuse of discretion by the trial court in its ruling that it would allow evidence of appellant's two prior convictions for robbery to be used for impeachment purposes. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

**2.** We recognize that the Pennsylvania Supreme Court is free to diverge from past case law and adopt the rationale and holding in *Luce*. However, in the absence of such a decision we reject the Commonwealth's assertion of waiver.