561 A.2d 335

**COMMONWEALTH of Pennsylvania**

v.

**Lawrence JACKSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 7, 1988.

Filed June 27, 1989.

404

George H. Newman, Philadelphia, for appellant.

Donna G. Zucker, Assistant District Attorney, Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and BECK and KELLY, JJ.

BECK, Judge:

The principal issue is whether a defendant may be impeached with a prior criminal conviction where the defendant was originally sentenced, imprisoned, and paroled over ten years before trial, but where the defendant later violated parole and was recommitted to serve the remainder of his original sentence within ten years of trial. The trial court held that under *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987), the prior criminal conviction could be admitted to impeach the defendant if he testified on his own behalf. We agree with the conclusion of the trial court.

The relevant facts are not in dispute. In January, 1974, Lawrence Jackson was sentenced to four to ten years imprisonment for a robbery he had committed the year before. In June, 1976, he was placed on parole. In 1981, he violated parole by committing auto theft. As a result of this violation, the Pennsylvania Board of Probation and Parole ordered Jackson recommitted for his robbery offense. In 1983 and 1984, he served an additional fifteen months in prison for the robbery.

On June 28, 1986, Jackson and a number of other men were involved in an altercation during which one Ronald Collins was fatally stabbed. Jackson was charged with murder, conspiracy, and possessing an instrument of crime. Prior to trial, Jackson sought a court order prohibiting the prosecution from impeaching his credibility with the robbery conviction when he testified at trial. The trial court denied this request, and Jackson then decided not to take the witness stand. On February 8, 1988, a jury convicted Jackson of conspiracy and possessing an instrument of crime and acquitted Jackson of murder. Post-verdict motions were denied, and on May 11, 1988, Jackson was sentenced to five to ten years imprisonment.

On appeal from his judgment of sentence, Jackson raises five issues. He claims: 1) the trial court erred by ruling that he could be impeached with the robbery conviction; 2) there was insufficient evidence of conspiracy and possessing an instrument of crime; 3) the trial court erred by grading the conspiracy count as a felony rather than as a misdemeanor; 4) the trial court gave an inaccurate jury charge on accomplice liability; and 5) the trial court erred by denying a motion for mistrial based upon the prosecutor's racially discriminatory exercise of peremptory challenges. We find that each of these claims is without merit.

■ We shall first review the trial court's ruling that appellant could be impeached with his prior conviction for robbery. Robbery is deemed to be a crime that involves dishonesty. *Commonwealth v. Kyle*, 367 Pa.Super. 484, 489, 533 A.2d 120, 123 (1987); *Commonwealth v. Dombrauskas*, 274 Pa.Super. 452, 461, 418 A.2d 493, 498 (1980). For many years, the courts of this Commonwealth applied a five part test in order to determine whether crimes involving dishonesty or false statement could be used for impeachment purposes. This test was derived from the the Pennsylvania Supreme Court's decisions in *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973) and *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978). Under the *Bighum/Roots* doctrine, the trial court was directed to consider the following factors when determining the admissibility of a prior conviction:

1) the degree to which the commission of the prior offense reflects upon the veracity of the defendant-witness; 2) the likelihood, in view of the nature and extent of the prior record, that it would have a greater tendency to smear the character of the defendant and suggest a propensity to commit the crime for which he stands charged, rather than provide a legitimate reason for discrediting him as an untruthful person; 3) the age and circumstances of the defendant; 4) the strength of the prosecution's case and the prosecution's need to resort to this evidence as compared with the availability to the

defense of other witnesses through which its version of the events surrounding the incident can be presented; and 5) the existence of alternative means of attacking the defendant's credibility.

*Roots*, 482 Pa. at 39–40, 393 A.2d at 367 (footnote omitted).

In time, the Pennsylvania Supreme Court reconsidered the *Bighum/Roots* doctrine and limited its application. In *Commonwealth v. Randall*, 515 Pa. 410, 528 A.2d 1326 (1987), Justice McDermott wrote for the Court majority that "the criteria has proven less than exact, and has done more to engender appeals than to guide courts and litigants." *Id.*, 515 Pa. at 414, 528 A.2d at 1328. Justice McDermott further noted that under Rule 609 of the Federal Rules of Evidence, impeachment with a prior offense that implicates dishonesty is permissible where the witness has served time for the offense within ten years of his appearance at trial.[1] The *Randall* Court concluded:

[W]hile we do not adopt the federal rule *per se* we do modify our current rule to the following extent: evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction

---

1. Federal Rule of Evidence 609 provides in relevant part:

(a) **General Rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

(b) **Time Limit.** Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date. If a period greater than ten years has expired the presiding judge must determine whether the value of the evidence substantially outweighs its prejudicial effect.

*Id.*, 515 Pa. at 415, 528 A.2d at 1329.[2]

■ Appellant argues that the trial court misinterpreted *Randall* when it ruled that he could be impeached with his robbery conviction. Initially, we must decide whether appellant has standing to raise this issue. After receiving an unfavorable ruling on the impeachment question, appellant opted not to testify at trial. In *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), the United States Supreme Court held that under Federal Rule of Evidence 609 a defendant cannot challenge a ruling authorizing his impeachment unless he takes the stand and is impeached. The Commonwealth urges us to dismiss appellant's claim on the basis of *Luce.* However, in *Commonwealth v. Richardson,* 347 Pa.Super. 564, 500 A.2d 1200 (1985), a panel of the Superior Court concluded that *Luce* is inconsistent with Pennsylvania law.[3] Although *Richardson* was decided prior to *Randall,* the Pennsylvania Supreme Court was careful to note in *Randall* that it did not adopt Rule 609 per se. The Pennsylvania Supreme Court modified existing law only to the extent that evidence of prior crimes involving dishonest or false statement may now be used for impeachment if the defendant served time for the crime within ten years of trial. Nothing in *Randall* has undermined the precedential value of *Richardson.* Thus, under *Richardson,* appellant may challenge the trial court's impeachment ruling even though he did not testify at trial.

**2.** The *Randall* Court observed that the *Bighum/Roots* standard would continue to apply to circumstances where the Commonwealth seeks to impeach a defendant with crimes for which he was last imprisoned over ten years before trial.

**3.** *See also Commonwealth v. Gordon,* 355 Pa.Super. 25, 28 n. 1, 512 A.2d 1191, 1192 n. 1 (1986) and *Commonwealth v. Bailey,* 354 Pa.Super. 51, 53, 511 A.2d 180, 182 n. 1 (1986) (following *Richardson* ).

■ Appellant claims that the trial court should have weighed the evidentiary value of his robbery conviction against its prejudicial effect before deciding whether he was subject to impeachment. He notes that he was paroled for the robbery offense in 1976—over ten years before his 1988 trial. However, the crucial date for impeachment purposes is not when a defendant was initially paroled for an offense but when a defendant was last imprisoned for an offense. Appellant was recommitted as a parole violator in 1983. "Recommitment is an administrative determination that the parolee should be reentered to serve all or part of the unexpired term of his original sentence." *Rivenbark v. Pennsylvania Board of Probation and Parole*, 509 Pa. 248, 253, 501 A.2d 1110, 1113 (1985) (footnote omitted). Thus, appellant served time for the robbery sentence within ten years of trial. Accordingly, under *Randall*, it was not necessary for the trial court to engage in a case specific balancing inquiry.

■ We interpret *Randall* as providing a bright-line rule that a defendant may be impeached with a crime involving dishonesty for which he has been imprisoned within ten years of trial regardless of whether his last period of imprisonment for that crime was imposed at the original sentencing hearing or at a hearing on the revocation of parole. In either case, the defendant's veracity may be called into question. The probative value of the conviction has not been eroded simply because the defendant was paroled over a decade before trial. If a defendant is recommitted as a parole violator, he has twice breached society's trust, once when he committed the original crime and again when he violated the terms of parole. The parole violation tends to indicate that the defendant was never successfully rehabilitated following his commission of the offense that cast doubt on his willingness to tell the truth. Moreover, we see no reason why a parole violator should be shielded from cross-examination while a defendant who has paid his debt to society by serving the full-length of his

maximum sentence within ten years of trial should·be subject to impeachment.

We further note that this reading of *Randall* is in accord with the case law interpreting Rule 609 of the Federal Rules of Evidence. The federal courts have repeatedly held that the date of release following a recommitment for a parole or probation violation should be used to calculate whether imprisonment for an offense falls within the ten year period for impeachment. *United States v. Gray*, 852 F.2d 136 (4th Cir.1988) (parole violation); *United States v. McClintock*, 748 F.2d 1278 (9th Cir.1984), *cert. denied*, 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985) (probation violation); *United States v. Brewer*, 451 F.Supp. 50 (E.D. Tenn.1978) (parole violation).

Appellant emphasizes that in *McClintock*, the Ninth Circuit stated that a trial court might have discretion to bar impeachment if a violation bears little relation to the offense for which the defendant was originally sentenced. Appellant then asserts that his parole violation (committing auto theft) was not similar to his original crime (robbery). We are not persuaded by this argument. The language in *McClintock* upon which appellant relies is obiter dictum. Nothing in *Gray* or *Brewer* lends support to the notion that impeachment is not permitted unless the parole violation and the original crime are closely related offenses.[4] Moreover, in *Commonwealth v. Randall, supra,* the Pennsylvania Supreme Court stressed the need for a clear and predictable rule of impeachment that would guide courts and litigants. We therefore hold that a trial court may properly allow a defendant to be impeached with a crime involving dishonesty or false statement where the defendant was imprisoned for that crime within ten years of trial following

---

4. In *Gray*, the Fourth Circuit did not describe the crime which triggered revocation of parole; apparently, the court viewed the nature of the parole violation as irrelevant. In *Brewer*, the defendant was originally sentenced for kidnapping and parole was revoked after the defendant committed rape, aggravated assault, and assault with a deadly weapon.

recommitment as a parole violator.[5]

■■■ Appellant next argues that there is insufficient evidence of conspiracy or possessing an instrument of crime or conspiracy. His central argument is that since the jury acquitted him on the murder charge, we must disregard all of the evidence which supports the murder charge, and that without this evidence the jury's verdict of guilt on the lesser charges cannot be sustained. The flaw in this argument is that "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Anderson,* 379 Pa.Super. 589, 592, 550 A.2d 807, 809 (1988) (en banc) (quoting *Commonwealth v. Carter,* 444 Pa. 405, 408, 282 A.2d 375, 376 (1971)). The test for the sufficiency of the evidence of any particular crime is whether viewing all of the evidence adduced at trial in the light most favorable to the Commonwealth, the jury could reasonably conclude that each element of that crime was established beyond a reasonable doubt. *See Commonwealth v. Lloyd,* 376 Pa.Super. 188, 191, 545 A.2d 890, 892 (1988). In this case, there clearly was sufficient evidence of possessing an instrument of crime and conspiracy. The fact that the jury convicted appellant of these charges and acquitted appellant of murder means at most that the jury verdicts were inconsistent. It has long been the law in Pennsylvania that the inconsistency of verdicts in a criminal case does not provide a basis for relief. *Commonwealth v. Trill,* 374 Pa.Super. 549, 559, 543 A.2d 1106, 1111 (1988).

5. Appellant also challenges the pretrial ruling permitting impeachment of a prospective witness for the defense. This prospective witness was convicted and sentenced for robbery, was released on probation over ten years before trial, violated probation by committing a theft, and was recommitted to serve his original robbery sentence within ten years of trial. The trial courts' ruling as to this prospective witness was correct for the same reasons that the trial court's ruling as to the appellant was correct. "[T]he same rules apply for impeaching a witness as for impeaching a defendant." *Commonwealth v. Williams,* 371 Pa.Super. 509, 513, 538 A.2d 557, 559 (1988). Furthermore, the same rules apply for impeachment following revocation of probation as apply for impeachment following revocation of parole. *See McClintock,* 748 F.2d at 1288.

■ Appellant next alleges that the trial court erred by grading his conspiracy conviction as a felony. Appellant was originally charged on the bill of information with conspiracy to commit "murder and/or aggravated assault".[6] At trial, however, the Commonwealth did not pursue the theory that appellant conspired to commit aggravated assault and the court charged the jury only as to conspiracy to commit murder. The jury verdict found appellant guilty of "conspiracy". Appellant now claims that it is impossible to tell whether the jury intended to convict appellant of conspiracy to commit aggravated assault or of conspiracy to commit murder and that therefore we must err in his favor and assume that he was convicted of only the lowest grade of conspiracy to commit aggravated assault, a misdemeanor. This argument is frivolous. The jury clearly intended to convict appellant of conspiracy to commit murder since that was the offense discussed in the jury charge. Therefore, the conspiracy conviction must be graded as a felony.

■ Appellant next contends that the trial court gave a misleading charge on accomplice liability which indicated that presence at the scene of a crime will support a finding of guilt. Viewing the charge as a whole, we find that the court adequately conveyed to the jury that mere presence at the scene of a crime is not sufficient to establish criminal culpability.

■ Finally, appellant argues that the Commonwealth exercised peremptory challenges in a racially discriminatory manner. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a defendant is entitled to relief if he establishes a prima facie case of racial discrimination which is not successfully rebutted by the Commonwealth. A prima facie case of discrimination consists of three elements: 1) the defendant's membership in a cognizable racial

6. The information was in technical violation of Pennsylvania Rule of Criminal Procedure 228 which states that each offense should be listed in a separate count. *See Commonwealth v. Hill,* 340 Pa.Super. 155, 165 n. 6, 489 A.2d 889, 894 n. 6 (1985).

group; 2) the prosecutor's use of peremptory strikes to exclude members of that group; and 3) an inference arising from the totality of the circumstances that the prosecutor used the strikes to exclude venirepersons on account of race. *See Commonwealth v. Abu–Jamal,* 521 Pa. 188, 197–198, 555 A.2d 846, 850 (1989). The trial court's finding as to the presence or absence of a prima facie case is ordinarily entitled to deference by an appellate court. *See Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1722–1723.

In the instant case, appellant bases his racial discrimination claim solely on the fact that he is black and that the prosecutor used five of his seven peremptory challenges to strike black venirepersons. Appellant does not contest the Commonwealth's assertion that: 1) there was no evidence of discriminatory intent in any statement, question, or mannerism of the prosecutor during voir dire; 2) the prosecutor struck one white venireperson and the prosecutor never exercised his final peremptory challenge; 3) five blacks were seated on the trial jury; and 4) the victim of the appellant's crime was black, most of the Commonwealth's witnesses were black, and the Commonwealth's case did not implicate any racial issues. There is no per se rule that a prima facie case of discrimination exists whenever the prosecutor has directed most of his peremptory challenges at black individuals. *See, e.g., Commonwealth v. Abu–Jamal, supra; Commonwealth v. Hardcastle,* 519 Pa. 236, 546 A.2d 1101 (1988). Under the facts of this case, the trial court did not abuse its discretion by concluding that appellant failed to establish a prima facie case of discrimination.

Judgment of sentence affirmed.

KELLY, J., files a concurring statement.

KELLY, Judge, concurring:

I join Judge Beck's well reasoned opinion. As narrowly constructed by our Supreme Court, the 10–year rule announced in *Commonwealth v. Randall,* 515 Pa. 410, 528

A.2d 1326 (1987), appears to apply only with respect to release from confinement on the prior *crimen falsi* offense, and not to release from confinement on subsequent non-*crimen falsi* offenses. Hence, the fine distinction drawn in this case is appropriate and prudent.

More generally speaking, however, I understand the 10 year rule announced in *Randall* to be an expression of a conclusion that the passage of 10 years without repetition of criminally deceptive conduct involves sufficient attenuation of the relevance of evidence of a prior conviction for a *crimen falsi* offense to the issue of credibility to warrant a balancing test for admissibility, rather than a *per se* rule of admissibility. Though *Randall* does not discuss the impact which subsequent incarceration for a non-*crimen falsi* offense would have on the balance between relevance and potential prejudice, I submit that evidence of a prior *crimen falsi* conviction would remain highly relevant despite its age, if the defendant had been incarcerated and thus rendered incapable of repeating the criminally deceptive act during the time between the prior offense and the current trial.

I believe it is only the passage of a 10 year period of honest law abiding conduct *at liberty* which may reasonably be deemed to demonstrate reformation, and thereby dissipate the probative weight of evidence of prior criminally deceptive acts on the issue of credibility. A convict who had no opportunity to demonstrate reformation should not by mere passage of time be *presumed* to have reformed. Professor Alschuler has cogently observed in a slightly different context:

> To probe a person's psyche and predict his future behavior is always an awesome task, and the optimistic belief that one can discern a person's general propensity for law observance from his regimented conduct in a prison now seems remarkably naive.

Alschuler, *Sentencing Reform and Prosecutorial Power*, 126 U.Pa.L.Rev. 550, 552, (1978). Likewise it would seem to me remarkably naive to consider appellant's non-repetition

of a criminally deceptive conduct *during confinement for any reason,* evidence of reformation thereby dissipating the unquestionable relevance of appellant's prior criminally deceptive conduct to the issue of his credibility.

Consequently, even if I were to assume, *arguendo,* that the distinction drawn by Judge Beck regarding the effect of appellant's recommittal on the prior *crimen falsi* conviction (for non-*crimen falsi* parole violations) on the 10 year rule was neither anticipated nor intended by our Supreme Court in its *Randall* opinion, I would nonetheless find the evidence properly admissible applying the residual *Roots/Bighum* balancing test. Though relatively dated, the evidence of appellant's prior *crimen falsi* conviction remained highly probative on the issue of his credibility in this case. *See Commonwealth v. Osborn,* 364 Pa.Super. 505, 508–16, 528 A.2d 623, 625–28 (1987) (16 year old perjury conviction was properly admissible under *Roots/Bighum* test); *Commonwealth v. Stinnett,* 356 Pa.Super. 83, 514 A.2d 154 (1986) (applying the *Roots/Bighum* test); *Commonwealth v. Duffy,* 355 Pa.Super. 145, 512 A.2d 1253 (1986) (same); *Commonwealth v. Bailey,* 354 Pa.Super. 51, 511 A.2d 180 (1986) (same).